Darlene BRIDER, SSN: 335–62–2886, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 97 C 4972.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 24, 1998.

David A. Bryant, Chicago, IL, for Plaintiff.

Samuel D. Brooks, United States Attorney's Office, Chicago, IL, for Government.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Darlene Brider ("Brider") appeals the final decision of Commissioner of Social Security Kenneth Apfel ("Commissioner") denying Brider's claims for supplemental security income disability insurance benefits pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381(a), 1382c(a).[1] Brider and Commissioner have filed cross-motions for summary judgment under Fed .R.Civ.P. ("Rule") 56, with Brider alternatively requesting a remand for a new hearing. For the reasons stated in this memorandum opinion and order, both motions for summary judgment are denied, while Brider's alternative remand request is granted in part and denied in part.

### Background

Brider, born on October 21, 1964, was 31 years old at the time of her administrative hearing ("Hearing"). She has something more than a high school education, and she last worked as a nurse's aide in 1990.

On February 22, 1993 Brider filed her application for supplemental security income benefits (R. 74). She claimed disability since January 1, 1993 due to "trembling legs, chest pains" and shortness of breath (R. 74). That initial application was denied, first on May 5, 1993 (R. 79) and then upon reconsideration on August 27, 1993 (R. 84). Next Brider sought the Hearing, which took place on January 8, 1996 before Administrative Law Judge ("ALJ") Larry Miller. Brider appeared with counsel at the Hearing and testified before the ALJ.

At the Hearing Brider complained of pain in her right knee and lower back (R. 54–55). She claimed that the pain had begun after the birth of her child in 1988 but became worse after she began gaining weight in the early 1990's (R. 52–54).

Brider, who is between 5'1-3/4" and 5'2-1/2" tall (R. 141, 183), weighed 255 pounds in May 1992 (R. 334). Although she lost weight in 1993—going down to a low of 187 pounds in August of that year—as a result of a thyroid problem, after the successful treatment of that thyroid condition she then regained all that she had lost (R. 216). By July 1994 she weighed 244 pounds (R. 341), and her weight rose slowly until she was measured at 298 pounds in September 1995 (R. 351). At the Hearing she testified that she weighed 300 pounds (R. 53).

Most of Brider's documented medical history relates to the diagnosis and treatment of her thyroid condition, but several medical tests were conducted on her legs and back. Cervical spine and bilateral knee x-rays taken in 1991 were normal (R. 280). On November 6, 1995 Brider underwent an electromyography ("EMG") of her lower back that indicated irritability "in the lumbar spinal region from L2 to S1" but revealed no evidence of radiculopathy or peripheral neuropathy (R. 359).

Dr. Peter Perger also performed a magnetic resonance imaging ("MRI") scan of Brider's right knee on December 29, 1995. Dr. Berger's report contained the most significant medical findings relevant to Brider's social security claim. In his opinion the MRI

---

1. Further citations to the Act's provisions will take the form "Section—," using the Title 42 numbering rather than the Act's internal numbering. Pertinent regulations from 20 C.F.R. are cited "Reg. § —," omitting the "20 C.F.R." prefix. Social Security Rulings are cited "SSR—." Finally, "R.—" denotes the administrative record.

revealed "considerable thinning in the patellar cartilage involving the lateral facet" and "mild prepatellar edema suggesting prepatellar bursitis" (R. 331–32). In addition he reported an "abnormal signal noted in the posterior horn of the lateral meniscus" that "may represent significant degenerative disease as opposed to a true tear" (R. 332).

Brider testified at length about how her daily activities were limited by her back and leg pain. For example, she said that in the six months before the Hearing her legs had begun to give out whenever she walked more than six blocks and that she needed to hold onto something to walk more than a half block (R. 56–57). Brider also claimed that the pain in her back prevented her from doing almost any housework, interfered with her ability to sleep and meant that she spent much of her day in bed (R. 58–60).

Despite that evidence, on March 29, 1996 ALJ Miller issued an opinion ("Opinion") that denied Brider's application (R. 27). Brider then filed a request for review with the Appeals Council. On January 8, 1997 the Appeals Council denied that request, causing the ALJ's ruling to become Commissioner's reviewable final decision (Reg. § 404.981). Brider then exercised her Section 405(g) right of appeal to this Court.

*ALJ Decision and Standard of Review*

■ Brider must suffer from a disability to be eligible for her claim for benefits. "Disability" is defined in pertinent part as the inability (Section 1382c(a)(3)(A)):

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

*Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995) (citations omitted) sets out the customary five-step inquiry prescribed by Reg. § 404.1520 to determine whether a claimant is disabled:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals one of the impairments listed by [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing work in the national economy.

If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to [Commissioner] to establish that the claimant is capable of performing work in the national economy.

ALJ Miller denied Brider's claim at the final step of the analysis. Although Brider did satisfy steps one, two and four, the ALJ held that Brider did not meet step three and that Commissioner had met his step five burden. On that inquiry as to whether Brider was capable of performing work in the national economy, ALJ Miller applied Brider's vocational background and residual functional capacity to the Medical–Vocational Guidelines (the "Grid") and found that she could perform a significant number of light jobs (R. 26). As a consequence the ALJ held that Brider was "not disabled" for Title XVI purposes.

■ *Estok v. Apfel*, 152 F.3d 636, 637 (7th Cir.1998) has most recently reconfirmed that judicial review of the ALJ's factual determinations is limited to whether they were supported by substantial evidence in the record and that (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)):

> "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

By contrast, the ALJ's legal conclusions are reviewed de novo (*Dotson v. Shalala*, 1 F.3d 571, 575 (7th Cir.1993)).

## Listing 9.09 Claim

■ Brider first argues that the ALJ erred in finding that her impairments did not satisfy any section of the Listing for Medical Impairments (Reg. Pt. 404, subpt.P, app.1). In particular she urges that she met the condition defined in Listing 9.09 and was therefore entitled to the presumption that she was disabled. Listing 9.09 requires Brider to show (1) that she is obese (as determined by weight and height values set out in Table II of Listing 9.09) and (2) that she also suffers from one of five medical conditions specified in Listing 9.09A to 9.09E.

It is undisputed that Brider was obese as defined in Listing 9.09. Table II defines women who are 62 inches tall as obese if they weigh at least 242 pounds. As stated earlier, Brider tipped the scales at 244 pounds in July 1994, and her weight then gradually increased to a full 300 pounds at the Hearing date.

But Brider and Commissioner disagree as to whether she also satisfied the second element of Listing 9.09. Listing 9.09A (the only potential candidate proffered by Brider) requires:

> History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine....

Brider now contends that the record proves that she satisfied those requirements, so that she met Listing 9.09.

ALJ Miller's Opinion summarily rejected that argument in these terms (R. 26):

> The medical evidence establishes that the claimant has degenerative arthritis in the lower extremities, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in[,] Appendix 1, Subpart P, Regulations No.4.

Although the Opinion contained no explicit statement of the reasoning that led the ALJ to that conclusion, this earlier section of the Opinion might be read as shedding some light on the subject (R. 25):

> The Administrative Law Judge concludes that the claimant is an overweight individual, and that there is some evidence for a condition of arthritis.

> However, the Administrative Law Judge finds Exhibit 20 to be persuasive in this case. That exhibit contains an electromyelogram report dated November 6, 1995, which reports the presence of irritability in the lumbar paraspinal region from L2 to S1 with no definite evidence of radiculopathy or peripheral neuropathy. X-rays dated January 5, 1996 [2] showed possible degenerative disease at the lateral facet of the posterior horn of the lateral meniscus.

Unfortunately, it is not at all clear whether or not those two paragraphs were intended to explain why Brider did not meet Listing 9.09A. While the facts discussed there (Brider's weight and arthritic condition) would be central to that determination, both the content and context of those paragraphs strongly suggest that they were instead meant to address Brider's credibility in claiming that she was actually disabled by pain as such. That question need not be resolved now, however, because a remand on the issue is necessary irrespective of the meaning ascribed to those two paragraphs.

■ On the one hand, suppose (as appears more likely) that those two Opinion paragraphs were *not* intended to explain the ALJ's reason for rejecting Brider's contention that she met Listing 9.09A. If so, ALJ Miller's failure to explain his decision constitutes a clear breach of the ALJ's duty to explain his decision with particularity, especially because (as will be addressed further below) there was enough evidence in the record to sustain a contrary conclusion. Such cases as *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994) (citations and quotation marks omitted) confirm ALJ Miller's duty to articulate his reasoning:

> Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or

---

**2.** [Footnote by this Court] That reference is inaccurate. Exhibit 20 is a copy of a January 5, 1996 computer printout of Dr. Berger's findings from the MRI performed a week earlier (R. 268).

rejecting entire lines of evidence. Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion. We have repeatedly stated that the ALJ's decision must be based upon consideration of all the relevant evidence, and that the ALJ must articulate at some minimal level his analysis of the evidence.

So if ALJ Miller indeed failed to provide the required articulation of his analysis, this Court is compelled to remand the case for an explanation of why Brider assertedly did not meet Listing 9.09A.

That same result flows from the opposite hypothesis: that the quoted paragraphs from the Opinion did set out the ALJ's reason for rejecting Listing 9.09A. Under that scenario, the ALJ viewed the results of the EMG of Brider's back and the MRI of her right knee as if they weighed *against* Brider's claim. But because Dr. Berger's report based on the 1995 MRI was the only objective medical evidence that suggested any arthritis in Brider's knee, the ALJ must necessarily have accepted its findings as the predicate for his finding that Brider suffered from any arthritis at all. So if ALJ Miller considered Dr. Berger's report "persuasive" (as he says) in denying Brider's claim that she met Listing 9.09A, it can only be because the ALJ felt the report did not reveal a sufficiently severe degree of arthritis to merit such a listing. That view of the ALJ's reasoning is further supported by his terse statement that Brider did not meet any listing even though she suffered from degenerative arthritis.

■ But Listing 9.09A's plain language requires only the existence of (1) a history of pain, (2) limitation of motion and (3) objective medical evidence of arthritis in the affected joint—it does not impose any minimum threshold of severity for any of those conditions (see *Ingram v. Chater,* 107 F.3d 598, 602–03 (8th Cir.1997) and cases cited there). Thus the results of the MRI of Brider's knee (the only objective medical evidence in sup-

port of the ALJ's finding that Brider suffered from arthritis) can only help her cause, not harm it.

■ It follows then that if the ALJ denied Brider's claim as to Listing 9.09A because he thought the 1995 MRI did not show a severe enough arthritic condition (for he *did* find the existence of "degenerative arthritis"), he applied the wrong legal standard. That error too would require the remand of Brider's case for reconsideration under the correct standard "unless the record can yield but one supportable conclusion" (*Campbell v. Shalala,* 988 F.2d 741, 744 (7th Cir.1993)).

■ Commissioner argues that the record supports only one conclusion because it does not contain evidence of all the requisites of Listing 9.09A—more specifically because Brider assertedly provided no evidence that she had a history of pain and limitation of movement in her right knee. That contention calls for an assessment of whether there is enough evidence in the record such that ALJ Miller could have found that Brider met the low threshold—the mere existence, not any level of severity—set out in *Ingram* and like cases for those two elements of Listing 9.09A.

On that score the record (including Brider's medical history) does indeed contain evidence of both elements: a history of pain and a limitation of movement in her right knee. Brider complained of pain in her right knee during two different visits to the doctor in November 1995 (R. 352). And she again complained to her doctor on December 16, 1995, saying that her knee had bothered her since 1988 (R. 353). As for the limitation of movement requirement, Brider reported that Dr. Berger had "[s]uggested that as I walk the socket in the knee doesn't stay in place[;] it moves to the right when I walk" (R. 273).[3] Notes by an unidentified doctor (with a classically indecipherable signature) in November 1995 also refer to Brider's complaint that both her legs were "giving out" and that she felt weak (R. 352).

---

3. While Brider's description of Dr. Berger's observations is of course hearsay, the prohibition against hearsay evidence does not apply to administrative law hearings (see Fed.R.Evid. 1101). Hence an ALJ could rely on Brider's account of Dr. Berger's findings.

So the ALJ could readily have decided, based upon that evidence and Brider's description of her limited activities, that she satisfied all the elements of Listing 9.09A. Indeed, the ALJ's finding of Brider's lack of credibility in her complaints regarding pain does not challenge the existence of *some* pain (which suffices under the caselaw—see *Ingram*, 107 F.3d at 602 and cases cited there, requiring only "a minimal amount of pain"), but rather discounts her testimony as to its severity (R. 26, emphasis added):

> The claimant's subjective complaints and allegations, including pain, are not reasonably related to the clinical signs, findings, underlying impairments, and account of daily activities *to the extent alleged,* and are found not credible.

And the Opinion makes no finding at all (more importantly, no adverse finding) as to the existence of some limitation of movement, instead concentrating the bulk of firepower on the issue of pain. That posture of the case requires the rejection of Commissioner's motion for summary judgment on the claim that the record could support only an unfavorable conclusion.

On the other hand, nothing that has been said here calls for granting Brider's cross-motion for summary judgment. To the contrary, what has been said earlier indicates that the ALJ, if the criteria set out in this opinion were followed, could reasonably infer from the evidence that Brider did not meet Listing 9.09A's requirements. So Brider's motion for summary judgment must be denied as well.

In sum, Brider's case must be remanded no matter how the Opinion is deciphered. Either the ALJ completely failed to explain his reasoning, in which case the case has to be remanded to allow for such an explanation, or he applied the incorrect legal standard to Brider's claim, in which event a remand is necessary for the limited purpose of allowing the ALJ to determine whether Brider satisfied Listing 9.09A under the standard enunciated in *Ingram.*

### Brider's Assertions of Pain

■ In the course of determining that Brider had the residual functional capacity to do light work, ALJ Miller concluded that Brider's complaints that the pain in her right knee disabled her from working were not credible.[4] Brider now contends that the ALJ did not follow the statutorily mandated approach that governs subjective claims of pain and also failed to "minimally articulate" his reasons for rejecting her subjective complaints of pain.

■ Our Court of Appeals follows a two-step process outlined in the SSRs when evaluating a social security claimant's claim that pain has disabled him or her (*Pope v. Shalala*, 998 F.2d 473, 484–85 (7th Cir.1993); see Reg. §§ 404.1529, 416.929).[5] First, the ALJ determines whether the pain alleged is substantiated by objective medical evidence (*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)). If the medical evidence establishes the existence of a physical or mental condition that could reasonably be expected to produce symptoms such as pain, the ALJ must then evaluate the credibility of the claimant's subjective statements as to the intensity, persistence and functionally limiting effects of the symptoms (SSR 96–7p):

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the medical signs and laboratory findings, the individual's own statements about symptoms, any statements and other information provided by treating or examining

---

4. This question, which looks to pain itself as a potential disqualifying factor, necessarily calls for an evaluation confirming a significant quantum of pain (see, e.g., *Estok,* 152 F.3d at 639–42), as contrasted with the minimal amount discussed in the preceding section (where pain was only one of several factors that can, in combination, amount to disability).

5. *Pope* and later cases relied in part on SSR 88–13 in prescribing that test. SSR 88–13 has since been superseded, first by SSR 95–5p and then by SSR 96–7p, but those later SSRs explicitly state that they were meant to clarify, not change, the criteria for deciding when the evaluation of symptoms under Regs. §§ 404.1529 and 416.929 requires a finding about the credibility of the claimant's statements. There is no reason to believe that those later SSRs altered the framework established in *Pope.*

physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

In addition, SSR 96–7p (citing Reg. §§ 404.1529(c) and 416.929(c)) requires that the ALJ consider:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms...; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Brider argues that the ALJ failed to follow that framework before he discredited her description of the disabling effect of the pain in her right knee. That contention ignores ALJ Miller's statement that he relied upon the factors set out in Reg. § 416.929 and SSR 95–5p (the relevant SSR in effect on March 29, 1996) to make his credibility determination. It need not be decided whether that statement of itself could verify the ALJ's having done so, for a review of the Opinion confirms that ALJ Miller indeed conducted the review of the record and the additional factors required by SSR 96–7p.

Thus the ALJ discussed the objective medical tests and physician findings (Dr. Berger's report) that bore on Brider's complaints of knee pain (R. 25).[6] In addition he conducted a lengthy review of Brider's daily activities and detailed Brider's reports on the frequency, duration and intensity of her pain, noting that Brider claimed that her knee pain had begun after her child was born in 1988 (R. 23), that she could walk only six blocks before her legs gave out (R. 24) and that she needed to hold onto something (such as a shopping cart) if she walked for more than a half block or more than five minutes (*id.*). Those factors constituted the principal evidence that substantiated Brider's complaints of disabling pain.

It is true that ALJ Miller did not discuss whether Brider had received any pain medication or treatment for pain for her right knee, but Brider has not suggested that her credibility would have been enhanced if the ALJ had focused on that factor. Indeed, there is no evidence in the record that Brider ever received either such medication or any other treatment (medical or otherwise) for her knee.[7] That treatment-free medical history lends no support to Brider's claims of disabling pain, so that the ALJ's failure to address it in the Opinion—if erroneous at all—was harmless.

It cannot be said that ALJ Miller failed to consider all the factors identified in SSR 96–7p that could have supported Brider's account before he determined that her assertions of *disabling* pain were not credible. Because the ALJ thus followed the correct framework for assessing Brider's subjective complaints of pain, Brider's motion for remand on that ground must be denied.

██ Brider also complains that the ALJ failed to provide any articulation of his reasons for discounting her credibility. As already noted, *Herron,* 19 F.3d at 333 requires that the ALJ "articulate at some minimal level his analysis of the evidence." In this area the ALJ more than met that threshold.

ALJ Miller found Brider's testimony at the Hearing was about the intensity and extent of her pain inconsistent with several aspects of her medical history and her social security

---

6. While the ALJ did not state explicitly that Brider provided enough objective medical evidence to satisfy the first procedural step in the framework, his later review of the additional factors laid out in SSR 96–7p implies that Brider satisfied that first step.

7. Importantly, there is no indication that the ALJ relied on the absence of medication and treatment for knee pain as a factor to discount Brider's credibility.

application. In particular, he found Brider's contention that her condition had deteriorated significantly in the six months before the Hearing was incompatible with allegations that she had made in 1993 when she first filed her social security claim. And the ALJ found Brider's demeanor and testimony at the Hearing unconvincing because on several occasions Brider either contradicted herself or needed to be prompted on basic points by her lawyer.[8]

In sum, the ALJ enunciated several valid bases for finding that Brider's subjective complaints of pain were not credible. That determination survives under the generous standard of review confirmed in *Herron*, 19 F.3d at 335:

> Since the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong.

Brider's claim that the ALJ failed to provide any articulation of his reasons for not finding her credible as to the disabling effect of pain alone thus fails, and her motion for a separate remand on that score must be denied as well.

### Use of the Grid

ALJ Miller concluded that Brider suffered from "no significant nonexertional limitations" (R. 26), then applied Brider's vocational background and residual functional capacity to the Grid and found that Brider was capable of performing the full range of light work. Brider now argues that the ALJ improperly applied the Grid to her case because she suffers from significant pain. But as *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1989) (per curiam) teaches:

> This argument must fail because the disabling extent of the claimant's pain is a question of fact for the ALJ, and if pain is not found to interfere with the claimant's ability to work, then the grids may be used.

Here substantial evidence supported the ALJ's finding that Brider's claimed nonexertional limitations had no significant effect on her ability to perform the full range of light work. Brider's testimony was the only evidence in the record that could support the notion that she suffered from disabling pain—no doctor's report or other evidence corroborated her claim that her pain precluded her from meeting the demands of light work. As ALJ Miller did not find Brider's account of her level of pain credible, by definition he need not have found that Brider was so crippled by her pain that she could not perform light work. And that in turn renders the ALJ's use of the Grid proper, so that Brider's motion for remand on that ground must be denied as well.

### Conclusion

Because neither side has demonstrated entitlement to a judgment as a matter of law, each side's motion for summary judgment is denied. Brider's alternative motion for a remand must be granted, however, because ALJ Miller either (1) failed to explain his reasoning why Brider did not meet Listing 9.09A or (2) applied the wrong legal standard of proof to Brider's claim that she met that Listing. Either way a remand is required to resolve that Listing 9.09A issue under the standards set out in this opinion (a remand that is of course a sentence four remand under Section 405(g)). For purposes of that limited remand, this Court has found that both (1) the ALJ's determination as to Brider's credibility regarding the severity of her pain (but not as to the existence of *some* pain, which is the relevant consideration for Listing 9.09A purposes) and (2) the ALJ's use of the Grid are supported by substantial evidence.

---

8. It is true that one portion of the Opinion also seems to suggest that Brider's assertions were not consistent with the findings associated with the EMG on her back and the MRI on her knee.

But because the ALJ also provided two unambiguous and valid bases for not finding Brider credible, there is no need to rely on that more cryptic passage.