Shirley **CLAY**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of the Social Security Administration, Defendant.

No. 99 C 0093.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 24, 1999.

Barry Alan Schultz, Schultz & Winick, PC, Evanston, IL, for plaintiff.

Ernest Yi Ling, Ramune Rita Kelecius, U.S. Attorney's Office, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Before the court is Plaintiff's, Shirley Clay ("Clay"), action for judicial review of the final decision of the Commissioner of Social Security. For the reasons hereinafter set forth, the decision below is affirmed.

### BACKGROUND

### I. PROCEDURAL HISTORY

On June 30, 1994, Plaintiff applied for Supplemental Security Income ("SSI") disability benefits, alleging that she was disabled due to hypertension, low back pain and a hernia, with an alleged disability onset date of June 13, 1994. (R. 34.) Her application was denied initially and again on reconsideration. (R. 34, 42.) At Plaintiff's request, an administrative hearing was held on September 16, 1996 before an

Administrative Law Judge ("ALJ"). Plaintiff, and Dr. Irving Slott, a medical expert on her behalf, testified at the hearing. (R. 173.) Medical and other documentary evidence were also introduced therein. On April 27, 1997, the ALJ issued her decision finding Plaintiff **not** disabled.[1] (R. 16.) On November 6, 1998, the Appeals Council concluded that there was no basis to grant Plaintiff's timely "Request for Review," leaving the ALJ's decision as the final decision of the Commissioner. (R. 7.) Plaintiff's Complaint, seeking judicial review of that final decision, is now pending before the court pursuant to 42 U.S.C. § 1383(c)(3).

## II.  TESTIMONIAL EVIDENCE

### A.  Shirley Clay

Plaintiff was born on January 15, 1946, and was 51 years old at the time of the ALJ's decision. (R. 30.) She has a high school graduate equivalence diploma. (R. 60.) Her alleged disability began on June 13, 1994. (R. 30.) Prior to the onset of her alleged disability, she worked as a certified nurse's aide in a nursing home, which required her to do a great deal of bending and to lift patients in order to wash them and change their clothes. (R. 60.) She was able to sew, cook, dance, fish and drive a car. (R. 198.)

After 1994, Plaintiff worked part-time, approximately twelve hours per week, as a homemaker for a nursing service called Help at Home Service. (R. 52, 203.)

Plaintiff testified that this job required general house cleaning, mopping, dusting and cooking. (R. 202.)

Plaintiff claims that she is disabled due to the severe back pain that she suffers. She testified that her lower back and buttocks have a tingling sensation on both sides. (R. 187.) She also explained that the pain in her back is like a vice grip, and the tingling feels like little electrodes going through her back. (R. 187.) Plaintiff also testified that she is only able to stand up for five to ten minutes before feeling like her legs are going to fall out from under her. She can sit for up to forty-five minutes before feeling like she has to stand up or lay down. (R. 188, 189.) She said she is able to walk no more than half a block before having to stop because of the pain in her back. (R. 188.)

Plaintiff testified that she takes 800 milligrams of Motrin for her back pains. (R. 189–190.) She regularly visits certain doctors, but she has refused and continues to refuse to explain to the doctors the severity of her back pain. She fears that the doctor(s) will want to operate on her back, and she does not have proper insurance to cover an operation. She also fears that a back operation will leave her paralyzed. Thus, she tells her doctors that she has only a slight pain in her lower back. (R. 212, 213.) Plaintiff testified that the pain in her back was so severe that she would rate the pain an eight out of ten on a

---

1.  Specifically, the ALJ found: (1) the medical evidence establishes that Plaintiff has severe, well-controlled hypertension and back pain, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (2) Plaintiff's subjective complaints including those of debilitating back pain were considered under the criteria of SSR 96–7p and found not to be well-supported by other evidence in the record; (3) Plaintiff has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work in excess of a light level of exertion or work requiring repetitive stooping, kneeling, crouching, crawling, climbing ladders, ropes or scaffolds; (4) Plaintiff retains the residual functional capacity to perform her past relevant work as a chore housekeeper; (5) in the alternative, Plaintiff has the residual functional capacity to perform a wide range of light work; (6) Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of her decision; (7) based on an exertional capacity for light work, and the claimant's age, education and work experience, section 416.929 of Regulations No. 16 and Rule 202.13, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled"; and (8) Plaintiff's capacity for the full range of light work has not been significantly compromised by postural and nonexertional limitations. (R. 23–24.)

regular basis. Plaintiff also takes medicine to control her blood pressure, and claims to suffer from hypertension and anemia. (R. 194, 207.)

### B. Dr. Irving Slott

Dr. Slott testified that in his opinion, based on Plaintiff's education and experience and the evidence in the claim, that Plaintiff suffers from a medical impairment. (R. 217.) She suffers from pain, muscle spasm and significant limitation of motion in the spine. (R. 217.) Also, Dr. Slott testified that he could not rule out spinal stenosis, a condition where the lower part of the spine is closed up so there is not a free flow of spinal fluid in the spinal canal. This can put a considerable amount of pressure on the spinal nerves that come out of the spine [2]. (R. 218.)

Dr. Slott further concluded that it would be very difficult for Plaintiff to pursue her former job as a nurse's assistant because the bending and lifting required by the job would cause her a great deal of discomfort. (R. 218.) Someone with Plaintiff's symptomology would be able to sit for 15–20 minutes and then they would have to get up and, after they stood up, they would have to sit down after a short period of time. (R. 218.) He also stated that it was his impression that Plaintiff's description of the very extreme pain and symptoms from which she was suffering were supported by the objective medical records. (R. 219.)

### III. MEDICAL DOCUMENTARY EVIDENCE

### A. Cook County Hospital

On June 13, 1994, the date of her alleged onset of disability, Plaintiff went to Cook County Hospital complaining of dizziness, lightheadedness and tinnitus. She was diagnosed with hypertension and received medication. She continued to receive this medication through periodic visits to the Fantus Health Center at Cook County Hospital. (R. 72–74, 116, 120, 122.)

On August 29, 1995, Plaintiff was admitted to Cook County Hospital and underwent a total abdominal hysterectomy and a bilateral salpingo-oophorectomy. (R. 89.)

### B. Dr. Arnold H. Kaplan (Treating Physician)

On August 4, 1994, Plaintiff visited Dr. Arnold Kaplan, her treating physician, because of her back pains. (R. 78–79.) Dr. Kaplan found no limitation in Plaintiff's joint movement or function, no evidence of arthritis and no evidence of a herniated disc. (R. 78–79.) He found that she had normal straight leg raising, normal reflexes and normal sensory responses, and that she was not disabled to do sedentary work. (R. 78–79.)

### C. Dr. Samuel Gerber

On April 18, 1996, Plaintiff visited Dr. Samuel Gerber, a radiologist. (R. 129.) He determined that Plaintiff's fourth lumbar disc space was narrowed and that she suffered from minimal arthritic sclerosis at the articular margins. No evidence of joint disease or bone erosion was present. (R. 129.)

### D. Dr. Karen Leone

On April 18, 1996, Dr. Karen Leone, a consulting physician, noted that Plaintiff had a history of hypertension, but that she demonstrated no evidence of end-organ damage. (R. 127.) Dr. Leone noted that despite Plaintiff's complaints of lower back pain, her neurological functioning was normal, and she had no muscle atrophy or spasm. (R. 126–27.) X-rays showed that Plaintiff had some narrowing of the fourth lumbar disc space with minimal arthritic changes. No evidence of joint disease or bone erosion was present. (R. 129.)

---

2. Dr. Slott was unable to rule out spinal stenosis absent an MRI or a myelogram, neither of which, he testified, Social Security would "go for" considering Dr. Slott "can't definitively state that she covers a certain [Social Security] listing." (R. 217.)

### E. Dr. Robert England

On May 4, 1996, Dr. Robert England, a state agency medical consultant, reviewed Plaintiff's medical records, but did not examine her. (R. 130–37.) Dr. England completed a residual functional capacity ("RFC") assessment and found that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand and/or walk about 6 hours in an 8–hour workday, sit for about 6 hours in an 8–hour workday, and that she could not climb ladders, ropes or scaffolds. (R. 131–32.) She could occasionally climb ramps and stairs, stoop, crouch or crawl. (R. 131–32.)

### F. Dr. Claude Hamilton

On December 9, 1996, Dr. Claude Hamilton examined Plaintiff and evaluated her neurological condition. (R. 158–65.) Dr. Hamilton noted that Plaintiff had no neurological deficits, weakness or atrophy. (R. 160–61.) Dr. Hamilton did note that Plaintiff's lumbosacral spine had a limited range of motion, she suffered from a severe amount of pain, her gait was abnormal and she suffered from minimal osteoarthritis with occasional small osteophytes at the vertebral end plates. (R. 160–62, 165.) Dr. Hamilton concluded that Plaintiff was limited to lifting five pounds occasionally during the work day, and could stand and walk for only one to two hours during a work day, thus limiting Plaintiff to sedentary work. (R. 163–64).

### G. Dr. Leonard Smith

On January 2, 1997, Dr. Leonard Smith, an orthopedic consultant, examined Plaintiff and found no evidence of spinal nerve root irritation. (R. 154.) Plaintiff cooperated poorly with Dr. Smith's examination, but he was able to conclude, based on her past x-rays, that she probably had some mild degenerative arthritic changes in her lumbar spine. (R. 154.) Dr. Smith as-

sessed Plaintiff's residual functional capacity and found that she was able to perform unlimited lifting, carrying, standing, walking and sitting, but was limited in her ability to climb, stoop, crouch, kneel and crawl. (R. at 155–56.)

### *ANALYSIS*

Plaintiff has presented a number of issues for this court to resolve in determining whether to affirm the ALJ's decision: (1) whether the ALJ committed legal error by failing to apply the proper analysis to Plaintiff's allegations of pain; (2) whether the ALJ failed to accord the proper weight to certain medical opinions; (3) whether the ALJ's credibility determination was correct; (4) whether the ALJ erred by failing to mention Plaintiff's testimony regarding the side effects of her prescribed medications; and (5) whether the ALJ erred in her findings as to past relevant work and claimant's ability to perform other work.

### I. STANDARD OF REVIEW

■ The Social Security Act authorizes judicial review of any final decision made by the Commissioner.[3] 42 U.S.C. § 405(g). Under the Act, the court has the power to enter a judgment affirming, modifying or reversing any decision made by the Commissioner. The findings of the Commissioner as to any fact, if supported by substantial evidence, are deemed conclusive. 42 U.S.C. § 405(g). "Although the reviewing court must consider all of the evidence in the record, it may not decide facts anew, reweigh the evidence [or] substitute its judgment for that of the ALJ." *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). In making the determination as to whether "substantial evidence" supports the decision of the Commissioner, the court must review all evidence that is part of the record in order to ascertain whether it contains " 'such relevant evi-

---

**3.** Because the Appeals Council refused to consider the ALJ's decision, the ALJ's findings and conclusions constitute the final decision of the Commissioner of the Social Security Administration. *Herron v. Shalala,* 19 F.3d 329, 332 (7th Cir.1994).

dence as a reasonable mind might accept as adequate to support the conclusion.' " *Williams v. Chater,* 1996 WL 153884, *8 (N.D.Ill.1996) (*quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

■ The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact and determine the case accordingly. *Perales,* 402 U.S. at 399–400, 91 S.Ct. 1420. In addition, the ALJ is required to consider all relevant evidence and is prohibited from selecting and discussing only that evidence that favors his ultimate conclusion. *Perales,* 402 U.S. at 401, 91 S.Ct. 1420. This court considers only whether substantial evidence supports the ALJ's decision.

### A. Statutory and Regulatory Framework

"A claimant has the burden of establishing by credible evidence that she was disabled within the meaning of the Social Security Act." *Durant v. Chater,* 906 F.Supp. 706, 710 (D.Ma.1995); *See Deblois v. Secretary of Health & Human Services,* 686 F.2d 76, 79 (1st Cir.1982). The Social Security Act defines "disability" as:

> the inability to engage in any substantial gainful activity by reason on any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The statute further provides:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

### B. The Five–Step Inquiry

A five-step inquiry outlined in the Social Security Regulations determines whether a person is "disabled." 20 C.F.R. § 1520(a)–(f). The first step is to determine whether the claimant is employed in a gainful activity. If so, then the claimant is automatically considered not disabled. If not, then the second step is to consider whether the claimant has a *severe* impairment or combination of impairments that significantly limit[s] claimant's physical or mental ability to perform basic work activities. If the claimant does not suffer from an impairment of this degree, she is automatically not disabled. If the claimant does suffer from an impairment of this degree, the third step is to determine whether her impairment meets or equals one of the impairments "listed by the Secretary." If so, the fourth step is to determine whether the claimant's impairment prevented her from performing past work. This determination depends on the claimant's residual functional capacity as well as the functional requirements of her past work. If the impairment prevented claimant from performing her past work, then she moves on to the fifth step, which determines whether claimant's impairment prevents her from performing other work in the economy. If so, she is considered disabled. If the claimant reaches step five, the Commissioner has the burden of proving that there are jobs in the national economy that the claimant can perform. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994) (*citing Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993)).

### II. THE ALJ APPLIED THE PROPER ANALYSIS TO PLAINTIFF'S ALLEGATIONS OF PAIN.

Plaintiff contends that the ALJ committed legal error by failing to apply the proper analysis to Plaintiff's allegations of pain. (*See* Pl.Mot. at 10.) 20 C.F.R. 404.1529 and Social Security Ruling ("SSR") 96–7p set forth the requirements for an adjudicator when analyzing a claimant's symptoms, including pain. Specifically, SSR 96–7p provides a two-step process for evaluating symptoms such as pain:

> First, the adjudicator must decide whether there is an underlying medical-

ly determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could *reasonably be expected to produce the individual's pain....* If there is no medically determinable physical ... impairment(s), or if there is a medically determinable physical ... impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain ... the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical impairment(s) that could *reasonably be expected to produce the individual's pain* ... has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. (emphasis added)

Plaintiff maintains that the record contains objective medical evidence which could reasonably be expected to cause her pain[4], and therefore, the ALJ was required to consider certain specific additional factors in determining the functional limitations caused by the pain. (*See* Pl. Mot. at 11.) According to Plaintiff, these factors, which are set forth in SSR 96–7p, include: her daily activities, medication(s) and other treatment, as well as aggravating and precipitating factors. *See* SSR 96–7p.[5] Plaintiff interprets SSR 96–7p to read that because the ALJ made a credibility determination, she was required to discuss each of the aforementioned seven factors and the relevant evidence in reaching a decision regarding a claimant's alleged disability. (Pl.Mot. at 11, 13.) It is Plaintiff's position that the ALJ did not specifically address her complaints of pain, other than to find them not credible or inconsistent with the extent Plaintiff's testimony alleged an inability to perform any kind of work activity, and that this was legal error.[6] (Pl.Mot. at 11, 13.) This

---

4. Plaintiff points to Dr. Slott's testimony in support of her argument that the record contains medical evidence of an impairment which could reasonably be expected to produce the pain alleged:

> Q: And is it your impression that her [Plaintiff's] description of the very extreme pain and symptoms that she's suffering are supported by objective medical records?
> A: Yes, as far as the x-ray of the lumbo sacral spine is concerned, there is a considerable possibility that that is the cause.

(R. 219.)

5. SSR 96–7p provides that "when additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." The Ruling requires that when the adjudicator is assessing the credibility of an individual's statements, she must consider, in addition to the objective medical evidence, the following factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medications the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

6. Plaintiff also argues that the ALJ's finding was contrary to that of the post-hearing consulting neurologist, Dr. Hamilton, who found that Plaintiff was restricted to lifting no more

court disagrees, finding that substantial evidence exists to support the subject determination(s) of the ALJ.

SSR 96–7p, moreover, does not require an ALJ to analyze and elaborate on each of the seven factors set forth when making a credibility determination. *See Brider v. Apfel*, 18 F.Supp.2d 900, 907 (N.D.Ill.1998) (explaining that enunciating several bases for finding plaintiff's subjective complaints of pain not credible was sufficient.). To the contrary, SSR 96–7p says:

> [t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

It is well established that an ALJ's credibility determination will not be disturbed unless it is "patently wrong." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996), *citing Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir.1994). "Since the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994.) The ALJ enunciated several valid bases for finding that Plaintiff's subjective complaints of pain were not credible. Her decision was consistent with the aforementioned requirements of SSR 96–7p and survives under the generous standard of review confirmed in *Herron.* The ALJ stated that the record lacked objective medical evidence to establish that Plaintiff had sought treatment for her back in more than two years prior to her hearing for what she and her daughter described as incapacitating pain. (R. 21.) Furthermore, the ALJ cited several inconsistencies between Plaintiff's testimony and her actions, and analyzed many of the daily activities in which Plaintiff is said to have engaged.[7] (R. 21.) The ALJ gave the requisite weight to the record as a whole in making her credibility determination such that this court can conclude her basis for rejecting Plaintiff's pain complaints as not fully credible was grounded in the evidence and articulated in her decision, and that her

---

than five pounds, could stand and/or walk for no longer than one to two hours out of an eight-hour day, and was not able to perform any type of work other than sedentary work. However, these findings are directly contradicted by the findings of Drs. England and Smith who, essentially, opined that Plaintiff was able to more than sedentary work. Dr. Smith found that Plaintiff was able to perform unlimited lifting, carrying, standing, walking and sitting, though she was limited in her ability to climb, stoop, etc. Dr. England found that Plaintiff could frequently lift up to 10 pounds, occasionally lift 20 pounds, stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, occasionally climb stairs, stoop, etc. (*See also*, Treating Physician Kap-

lan's Findings at R. 78–79.) The ALJ noted, also, that Plaintiff was able to sit for more than one to two hours during her hearing without experiencing any apparent discomfort. While the ALJ's opinion of Plaintiff's physical condition would not be admissible, the observation that she did not "squirm" during the hearing is appropriately part of the ALJ's credibility assessment. *Birdsall v. Apfel*, 1998 WL 566885, *6 (N.D.Ill.1998).

7. Specifically, the ALJ referred to Plaintiff's daily activities, measures of treatment she used to relieve her pain, factors that aggravate the symptoms and the intensity of her pain. This analysis encompasses four of the seven enumerated factors set forth in SSR 96–7p.

decision gave Plaintiff a full and fair review of her claim.

## III. THE ALJ GAVE APPROPRIATE CONSIDERATION TO THE MEDICAL EXPERT'S AND CONSULTATIVE EVALUATOR'S MEDICAL OPINIONS.

Plaintiff contends that in reaching her conclusion that Plaintiff was not disabled, the ALJ improperly rejected the opinions of Dr. Slott and Dr. Hamilton. Furthermore, Plaintiff avers that the ALJ failed to accord the proper weight to all of the other medical evaluators and medical evidence. (Pl.Mot. at 14.) Specifically, Plaintiff claims that the fact that there was no evidence of neurological deficit, or that Mrs. Clay's use of a cane was not prescribed, or that she was never referred to a neurological or orthopedic clinic by Cook County Hospital staff for her back pain, are not indicative that her structural deficit of degenerative arthritic changes in her lumbar spin are not disabling. (Pl.Mot. at 15.) To the contrary, Plaintiff contends, the record contains medical evidence and a supporting medical opinion which establishes that Plaintiff had an abnormal gait. Therefore, Plaintiff concludes that the ALJ's conclusion that Plaintiff is not disabled was based upon illogical and erroneous statements and should be reversed. (*See* Pl.Mot. at 15.) This court disagrees.

■ It is well established that an ALJ "cannot make [her] own independent medical determinations about the claimant." *Rousey v. Heckler,* 771 F.2d 1065, 1070 (7th Cir.1985). An ALJ's determination must be based on testimony and medical evidence in the record. As our 7th Circuit Court of Appeals has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Rohan*

*v. Chater,* 98 F.3d 966, 970 (7th Cir.1996). *See e.g., Herron v. Shalala,* 19 F.3d 329, 334 n. 10 (7th Cir.1994); *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir.1990), *cert. denied,* 502 U.S. 901, 112 S.Ct. 278, 116 L.Ed.2d 230.

■ The court finds, however, that substantial medical evidence exists in the record to support the challenged conclusion(s) of the ALJ. For example, although Plaintiff complained of disabling back pain, her medical records show that she had fairly minimal objective abnormalities. X-rays of her back showed some narrowing of one of her lumbar disc spaces and only minimal arthritic changes and no other abnormalities. (R. 129, 153, 165.) While Dr. Slott's testimony indicated that there was objective medical evidence that could cause Plaintiff's pain, and the x-ray evidence established an impairment which could produce the symptoms described by Plaintiff's, this court cannot conclude that the ALJ's decision rejected such evidence. Rather, the examinations conducted by Drs. England, Smith, Gerber and Leone were consistent and support the ALJ's conclusion regarding Plaintiff's residual functional capacity. The ALJ's decision explained that the opinion of Dr. Hamilton, who suggested that Plaintiff was limited to sedentary work by her back condition, was poorly supported by the objective medical evidence and treatment history, and appeared to be based on Plaintiff's description of her symptoms. (R. 20.) Specifically, the objective neurological findings and x-ray findings, which at most showed only minimal abnormalities, failed to support such a significant degree of limitation. (R. 78, 126–27, 129, 153–54, 160–61, 165.) Thus, from a review of the full record, this court concludes that substantial evidence exists to support the ALJ's rejection of this evidence that Plaintiff was limited to sedentary work and not disabled.[8]

8. Two further arguments of the Plaintiff are that the ALJ's credibility determination was erroneous because it was patently wrong on the record, and that the ALJ's decision was erroneous based on her failure to mention Plaintiff's testimony as to the side effects of her medication. (Pl.Mot. at 15.) As stated

above, the court concludes that ALJ Cropper's credibility determination was not patently wrong, as it was based on the substantial evidence presented by the record. Also, as discussed, supra, SSR 96–7p does not require an ALJ to elaborate on each of the factors set forth when making a credibility determina-

## IV. THE COMMISSIONER'S STEP FOUR AND FIVE FINDINGS

Plaintiff has argued that the ALJ erred in finding that Plaintiff could perform past relevant work and that substantial evidence does not support the Commissioner's finding as to step five (claimant's capacity to perform other work).

### A. Step 4/Past Relevant Work

Plaintiff contends that ALJ Cropper erred based on an inconsistency in her decision at step four of the five step inquiry set forth in 20 C.F.R. § 1520(a)–(f)[9]. The ALJ generally found that Plaintiff was able to perform her past relevant work as a housekeeper. However, in her specific evaluation, the ALJ determined that Plaintiff's past work as a housekeeper was not performed for a "long enough period" to be considered "past relevant work" for purposes of making a decision at step four of the five-step inquiry outlined in 20 C.F.R. § 1520(a)–(f).[10] (R. 22–23.) As the specific must control over the general, this court concludes that no past relevant work existed. Perhaps realizing this, the ALJ, anyway, did proceed to step five, where the burden of proof shifts to the Commissioner to establish that Plaintiff, considering her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f.).

### B. Step 5/Vocational Consultant's Report and Capability of Claimant to Perform Other Work

■ Plaintiff contends that the ALJ did not rely on or refer to the vocational consultant's report in her decision, and therefore, it cannot constitute substantial evidence supporting her step five determination.[11] For the reasons set forth in footnote 11 herein, this court agrees. Respectfully, however, this point does not avail the claimant herein. In her decision, the ALJ made an appropriate step five determination, as follows:

> The fifth step in the sequential process is whether the claimant is able to perform other work. At this step in the sequential process the burden of proof shifts to the Administration to establish that the claimant can perform other jobs that exist in significant numbers in the national economy, consistent with her age, education, work experience, medical impairments, and RFC.
>
> The claimant is now 51 years of age, which age is considered to be that of a "person approaching advanced age" under Regulation 416.969. She has a high

tion. *Brider v. Apfel*, 18 F.Supp.2d 900, 907 (explaining, too that an ALJ's failure to discuss medication and its effect is harmless where plaintiff has not suggested that her credibility would have been enhanced if the ALJ had focused on that factor.)

Plaintiff argues, also, that the fact that she did not seek medical treatment for her back pain cannot preclude her from disability benefits. (*See* Pl.Mot. at 16–17.) The court agrees, but finds that the ALJ's conclusion that Plaintiff was not disabled was not based solely on Plaintiff's refusal to seek medical treatment for her back pain, but rather on all of the objective evidence presented by the record.

9. At step four, Plaintiff has the burden of proving that she is not able to perform her past relevant work

10. The ALJ did note, in the alternative, that assuming that the "chore housekeeping work

is not regarded as past relevant work, claimant retains the RFC to perform a wide range of light work." (R. 22.) Claimant's past relevant work history, however, does not include any light work.

11. This reply brief argument is in response to the argument raised in the Commissioner's Response brief, which states that "the ALJ relied on the vocational consultant's report to fulfill this [step five] burden." Plaintiff accurately points out that the ALJ's decision did not refer to this vocational consultant's report, nor did her decision indicate that she relied upon that report in any way. Also, this report is not clearly identified. In these circumstances, in this case, the court will not consider the report as constituting substantial evidence supporting the ALJ's step five determination.

school education and has performed only unskilled work in the past. 20 CFR 416.964 and 416.968 (1996). Based on the claimant's age, education, and work experience, if the claimant had the capacity to perform the full range of light work, section 416.969 of Regulations No. 16 and rule 202.13, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that she is not disabled. I find that the postural limitations imposed by claimant's back pain, and claimant's decision to carry a nonessential cane, do not significantly erode the occupational base of light, level jobs. I accordingly find that the claimant has not been disabled within the meaning of the regulations at any time through the date of this decision.

(R. 22.)

Accordingly, the ALJ made the following relevant findings:

> Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.13, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled".... The claimant's capacity for the full range of light work has not been significantly compromised by postural and nonexertional limitations. Accordingly, using the above-cited rule as a framework for decisionmaking, the claimant is not disabled.

Our detailed review of the authorities above cited by the ALJ in support of her step five determination discloses that the ALJ correctly applied these authorities and made an appropriate determination(s) thereunder based on the evidence of record. Accordingly, this court finds that the Commissioner has met the appropriate burden at step five of inquiry set forth in 20 C.F.R. § 1520(a)–(f), and that the ALJ's decision on this issue is supported by substantial evidence.

## CONCLUSION

In view of the foregoing, the Commissioner's decision is affirmed.